## THE MASON TIRE & RUBBER CO. v. LANSINGER.

*Negligence—Fireman injured extinguishing fire—Duty of property owner toward fireman—Location and erection of buildings—Warning of dangerous substances—Ordinary care by owner and fireman.*

1. The owner of real property owes no duty in the location or erection of buildings thereon to a member of a municipal fire company, who, in the discharge of his public duty, goes upon the premises to extinguish a fire in such buildings.
2. If there is a substance stored on the premises, which it is reasonable to presume will become dangerous to such fireman, as the fire progresses, it is the owner's duty to give warning of such danger, if this condition is known to him and he is present at the fire.
3. The warning required is such as a person of ordinary care and prudence would give under like or similar circumstances.
4. A failure to give such warning will render the owner of the property liable, in damages, for personal injury to a fireman caused by such danger, if the danger is unknown to the fireman and could not have been discovered by him with ordinary care under the then existing conditions.

(Decided September 29, 1921.)

ERROR: Court of Appeals for Portage county.

*Mr. S. H. Tolles; Mr. Orin C. Clement* and *Messrs. Waters, Andress, Southworth, Wise & Maxon,* for plaintiff in error.

*Mr. Blake C. Cook,* for defendant in error.

POLLOCK, J. John N. Lansinger brought an action in the court of common pleas of Portage county to recover damages for personal injuries which he sustained, and which he claims were caused by the negligence of the defendant company. The ac-

tion was tried in the court below, resulting in a verdict in favor of Lansinger. We will refer to the parties, plaintiff and defendant, as they appeared in the court below.

The Mason Tire & Rubber Company is a corporation engaged in manufacturing rubber products. One of its manufacturing plants is within the corporate limits of the city of Kent, Portage county. The plant consists of a number of different buildings and rooms. We will refer only to the room known as the spreader and mixer room and to the benzol tank building.

In the manufacturing of the rubber products which defendant was then engaged a large quantity of benzol was required. At the time of the accident hereinafter stated the defendant stored the benzol in a tank which was enclosed in a brick building having a metal roof. There was but one opening in this building and that was closed by a metal door. The building was about twenty feet from the spreader room; a pipe line was laid from the benzol tank into the spreader room, through which the benzol was drawn from the tank into the spreader room when it was required in the operation of the plant.

At the time of the accident complained of, the company maintained all the appliances necessary for the proper prosecution of its business. The location of the buildings was entirely suitable and proper for the operation of the defendant's plant.

One of the conditions incident to such manufacturing establishments is that fire may occur in the spreader room occasioned by the use of benzol. In the forenoon of June 7, 1920, a fire started in this room and the fire department of the city of Kent

responded. Who called the fire department, or notified it of the fire, is not stated in the record. On this day the plaintiff, who was assistant fire chief, was acting as chief of the fire department. After the fire department had been engaged for about half an hour in an attempt to subdue the fire, there was an explosion of the benzol tank and plaintiff was severely injured.

He alleged in his petition in the court below, first, that the benzol was stored in close and dangerous proximity to the spreader room, where fires were quite likely to occur from its use, and that the defendant was negligent in locating this tank so close to the spreader room that it rendered the plant unsafe to firemen who were required to go into the plant in order to put out a fire that might occur there; second, that defendant neglected to post notices of the presence and position of the explosive; and, third, that defendant neglected to warn him of the danger of this explosive substance.

The defendant claims that a property owner, when a fire occurs on his property in a municipality, and a fire department responds, owes the members thereof no duty except not to wilfully and intentionally injure them. It urges that the plaintiff cannot recover in this action.

It is said in argument, and correctly, that this question has never been before the courts of this state so far as appears from any reported cases. We find and counsel cite in argument and brief numerous cases from other jurisdictions in which the question was before the courts.

The question was before the supreme court of the state of Indiana in the case of *Woodruff, Admx.,* v. *Bowen,* 136 Ind., 431, 34 N. E. Rep., 1113. It ap-

pears from the facts in that case that a fire occurred in a building in the city of Indianapolis. In an effort to extinguish the fire one of the firemen went on the top of the building in the performance of his duty, and while there the building collapsed and he was precipitated into the fire and was killed. The claim was made that the building was not constructed with sufficient strength to withstand the ordinary weight that would be required during the time of a fire. An action was brought by his administrator against the owner of the building to recover damages, charging that he was negligent in the construction of his building. On demurrer, the court held that the owner of the property owed the plaintiff fireman no duty in the erection of his building.

The same principle was sustained by the supreme court of Colorado in the case of *Lunt* v. *Post Printing & Publishing Co.*, 48 Col., 316, 110 Pac. Rep., 203. In that case the firemen were called to put out what was believed to be a fire existing in the etching room. A fireman went into the room filled with what was supposed to be smoke, but which proved to be fumes and vapor from nitric acid. In a container in this room were several gallons of nitric acid. It was alleged in the petition that from some defect in the container the nitric acid escaped and brought about such a condition of the atmosphere as caused this fireman at the time he entered the room to believe it to be smoke. The fumes and vapor from nitric acid are deadly poison and the fireman's death resulted from breathing these fumes and vapor. The petition further alleged that the owner knew that if the nitric acid should escape it would be dangerous to a person entering the room. Negligence was charged in keeping the nitric acid

in. or near to this room.   A demurrer to the petition was sustained in that case.

Each of the cases cited above contains reference to many cases sustaining the principle that the owner of real property owes no duty, in the location and erection of the buildings thereon, to a member of a municipal fire department who may go upon such premises to extinguish a fire in the discharge of his duties.

"Firemen who enter a building in case of fire are licensees merely and the owner or occupant is not liable for their injury by reason of any defects or unguarded pitfalls, or other dangers." 2 Cooley on Torts (3 ed.), 1268.

In 20 Ruling Case Law, at page 63, Section 55 sustains the principle that no duty rests upon the owner or occupant to keep the property in a safe condition.   Citing numerous reported cases the author says: "There seems to be a substantial agreement of authority that a member of a public fire department who enters upon premises in the discharge of his duties is to be deemed a licensee merely, to whom the owner or occupant owes no greater duty than to refrain from the infliction of wilful or intentional injury."

The rule that the owner of the property is not under any obligation to make or keep his premises safe for a fireman who may enter thereon to put out a fire has been fully determined by the courts of this country.   The principle has been universally approved that the owner is under no duty to a member of a municipal fire department, who goes upon his premises to extinguish a fire in the discharge of his public duty, to keep the land and buildings thereon in a safe condition.   The plaintiff cannot recover under his first ground of negligence.

In this connection complaint is made to the charge. On page 256 of the bill of exceptions the court said to the jury:

"He may be there by invitation, and in instances of that kind a different rule applies. And the view that the court has taken as to the law applicable to this case is, that the plaintiff as a member of this fire department was rightfully on the property at the time of the fire, and was there doing something necessary to be done for the benefit of the defendant, in and about the business in which the defendant was then engaged on its own property, and that being the situation the law casts upon the defendant the duty of exercising ordinary care not to cause or permit injury to come to the plaintiff."

We think the court was in error in this part of the charge. The court by that charge placed upon the defendant the same care for the safety of the plaintiff as the law would have done if he had been an employe. From it the jury might well infer that the defendant was required to erect and maintain the buildings on his premises so that they would be reasonably safe for plaintiff who was called there on account of this fire. The jury might well have taken from this charge that the defendant was negligent in placing the tank containing benzol in such close proximity to the other buildings.

We now come to the duty of the defendant to warn plaintiff and others who were on the premises endeavoring to extinguish the fire, of the danger of an explosion of the benzol tank. Much has been said in the argument and briefs about whether a fireman under such circumstances is on the premises by implied invitation or as a licensee. In the adjudicated cases he is denominated a licensee. But whether or not he should be called a licensee he is

on the premises in the performance of his public duty. His right to be on the premises at such a time does not depend upon the consent of the owner. While he is performing a public duty he is also using his efforts to preserve the property of the owner, and in cases of the character that we have now before us, where there are no adjoining properties near enough to be in danger by the fire, the benefit resulting from his labor accrues wholly to the owner.

We then come to the question of whether it is the duty of the owner of property when he is present at the fire and knows of a hidden peril to warn of such danger those who may be engaged in trying to extinguish the fire.

3 Shearman & Redfield, in their Law of Negligence (6 ed.), Section 705, in speaking of a bare licensee, say:

"They take all risks upon themselves and have no right to complain of any defect in the premises, even though caused by the direct act of the owner (*i. e.,* a pit sunk in the land), unless the act is malicious or is committed with notice of the fact that strangers are likely to approach, and without any effort to warn them of the danger, under circumstances which justify a belief that the owner was indifferent to the injuries which might happen to them."

If the owner knows that a licensee is upon his premises and makes no effort to warn him of the dangers, and the circumstances are such that it would justify a belief that the owner was indifferent to the injuries which might happen to him, the owner is liable. We think the same rule should be applied in favor of a fireman who is on the premises attempting to extinguish a fire thereon. If the owner

fails to warn when he knows that there is a substance stored on the premises that is likely to explode during the progress of the fire and cause serious injury to those in or about the building engaged in an effort to extinguish the fire, he may be held to have been indifferent to the injuries which such a condition may cause.

In Section 705a, the same authors in speaking of police officers and firemen say:

"The law, by commanding peace officers and firemen so to enter, in truth, dispenses with consent or invitation, and for the protection of the owner and occupant and of the community imposes this limitation upon the more general right of property. But as servants assume the risks ordinarily incident to their employment, so too do peace officers and firemen assume the risks ordinarily incident to the performance of their duties, including all such defects in premises as persons of ordinary prudence might under ordinary circumstances be able to guard themselves against, but which, owing to the nature of the service to be rendered and the circumstances under which it is to be performed, are, in this case, incidental dangers. And to this extent owners and occupants owe them the duty of exercising reasonable care."

The supreme court of Rhode Island in the case of *Beehler* v. *Daniels, Cornell & Co.*, 18 R. I., 563, 29 Atl. Rep., 6, in speaking of the duty owed by the owner of the property to a fireman who has entered upon his premises in the course of his duty as such fireman, uses the following language at page 565:

"An owner owes to a licensee no duty as to the condition of premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril, or willfully cause him harm."

The above rule was quoted with approval by the court of appeals of Georgia in *Mandeville Mills* v. *Dale,* 2 Ga. App., 607, 611, 58 S. E. Rep., 1060, 1062.

"At common law the rule was well settled. The owner of premises owed to the licensee no duty as to the condition of the premises, save that he should not knowingly expose him to hidden perils or wantonly or willfully cause him harm." *Jonosky, Admr.,* v. *Northern Pac. Ry. Co.,* 57 Mont., 63, 74, 187 Pac. Rep., 1014, 1016.

The same principle was approved by the supreme court of Illinois in the case of *Calvert* v. *Springfield Electric Light & Power Co.,* 231 Ill., 290, 293, 14 L. R. A., N. S., 782, 784, as follows:

"The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public or to those who are likely to act upon such invitation, and if there are hidden dangers upon the premises he must use ordinary care to give persons rightfully upon the premises warning thereof, and that the owner owes such duty to an independent contractor or his servants while working upon his premises."

Our attention has been called to the case of *Meiers* v. *Fred Koch Brewery,* 229 N. Y., 10, 127 N. E. Rep., 491. The facts appear to be that the defendant company maintained a stable in the rear of its plant, and there was a private driveway from the public street back to the stable, which was used as a means of ingress and egress from the street to the stable.

The fire occurred during the night in the stable, and a fireman going back along this driveway fell into a ditch along the driveway, which had been left uncovered, and was injured. The court of appeals of New York permitted a recovery against the owner of the property on the ground that while the plaintiff was not on the premises by invitation, he had a right in the performance of his duty to go upon the premises, and a right to presume that the driveway which was used as a means of ingress and egress to the stable was in a safe condition for him to pass over it.

We think the principle has been established by the adjudicated cases, and is just and reasonable, that the owner of property who is present at the fire and knows that there is a substance stored on the premises, which it is reasonable to presume will explode and cause serious injury to those about the premises endeavoring to extinguish the fire, is required to give warning of such danger. A failure to give such warning will render the owner of the property liable in damages for personal injury to a fireman, caused by the explosion of such a substance, if the danger is unknown to the fireman and could not be discovered with ordinary care under the then existing circumstances. It is true that the fireman is not on the premises by any invitation of the owner, but he is there in the performance of a public duty imposed upon him by law, in the preservation of the owner's property, and to prevent the fire from spreading to the property of others. In failing to give him warning of a hidden peril the owner would be lacking in the common duties of humanity. The owner is and should be required to give warning of such danger.

The court charged the jury in regard to warning as follows:

"I have spoken of notice and information. If under the circumstances of the case you should find that it was the duty, in the exercise of ordinary care on the part of the defendant to have given notice or information to the plaintiff, then while the defendant might choose any means he saw fit of giving such notice or information, the notice or information must have been given, and must have been given in such a way as to come to the attention of the plaintiff."

Complaint is made of this charge, and rightly so, we think. The charge required the owner to give the warning in such a way as to come to the atten- tion of everyone engaged in extinguishing the fire. We think that this is placing the owner of property under too great a burden.

Our attention is called to a number of authorities on the duty of an employer to warn an employe, which hold that it must be given or come to the employe personally. This is correct so far as the relation of the employer and employe is concerned, but a rule making such requirement as this of the owner of property during the time of fire upon his premises would frequently, at least, be impossible of performance.

We think that all the warning required is such as an ordinarily careful and prudent person would give under like or similar circumstances.

Some other errors were complained of in regard to the requests to charge, but we need not now refer to them. It is sufficient to say that for the two errors complained of the judgment of the court below is reversed.

*Judgment reversed.*

FARR and ROBERTS, JJ., concur.